IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FAISAL WAZIR,                              :          No. 3:26cv526
                        Petitioner         :
                                           :          (Judge Munley)
                                           :
                                           :
                                           :
      v.                                   :
                                           :
ATTORNEY GENERAL OF THE                    :
UNITED STATES, *et. al.*                   :
                        Respondents        :

**MEMORANDUM ORDER**

Before the court is Petitioner Faisal Wazir's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). He is an immigration detainee in the custody of Immigration and Customs Enforcement ("ICE") at FCI-Lewisburg, a medium security federal prison.

Wazir is a native of Afghanistan. Id. at 2. At the end of the Afghanistan War, following the Doha Accord and during the negotiated withdrawal of American troops from Kabul, over 100,000 at-risk Afghan civilians were airlifted by our servicemembers and temporarily housed by the military during Operation Allies Refuge. That program evolved into Operation Allies Welcome, a non-military operation managed by the Department of Homeland Security ("DHS"). Wazir entered the United States as the result of these programs on September 3, 2021, as a refugee with a parolee visa. (See Doc. 1, Pet., at 2; Doc. 7-2, Resp.

Ex. 1, I-213 Record).  The government housed the petitioner at Fort Pickett in Blackstone, Virginia and then resettled the petitioner in Lancaster, Pennsylvania on November 29, 2021. (Doc. 1, Pet., at 2).

On September 22, 2022, Wazir filed an application for asylum and for withholding of removal with United States Citizenship and Immigration Services and this application is still pending. [1] (Doc. 7-2, Resp. Ex. 1, I-213 Record). Wazir's petition is not a model of clarity on this issue, but it appears that the petitioner indicates that he is willing to withdraw any appeals relative to his asylum application. (Doc. 1, Pet. at 2).

In 2023, Wazir was arrested on two occasions. Id.  These arrests led to convictions, on April 29, 2025, of indecent assault of an unconscious person and indecent assault without consent. Id.  Wazir was also convicted of theft by deception and a violation of the Vehicle Code. Id.  A judge in the Lancaster County Court of Common Pleas sentenced Wazir to two years of probation.[2] Id.

Following that conviction, on June 8, 2025, ICE Deportation Officers took Wazir into custody at his home, charging him with being removable under the Immigration and Naturalization Act ("INA") as, among other reasons, having been

---

[1] The court notes an affidavit of support of Wazir's asylum application from a Lieutenant Colonel in the United States Army. (Doc. 1-6 at ECF p. 5).  The Lieutenant Colonel details Wazir's efforts as a translator for personnel at Landstuhl Regional Medical Center, one of the Army's German installations, to facilitate medical treatment of Afghan refugees there.

[2] The details of these offenses have not been provided to the court.

2

convicted of crimes involving moral turpitude, 8 U.S.C. § 1182(a)(2)(A)(i)(I). On June 25, 2025, an Immigration Judge ordered the petitioner's removal to Afghanistan, or alternatively, Pakistan. (Doc. 7-3, Resp. Ex. 3 at 1). Petitioner waived his appeal. Id. at 2.

Approximately eight months later, on March 2, 2026, the Clerk of Court docketed Wazir's petition for writ of habeas corpus. Liberally construed, his petition advances due process claims under Zadvydas v. Davis, 533 U.S. 678 (2001) and German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203 (3d Cir. 2020).

Only Zadvydas is applicable to Wazir's situation. That is, German Santos involved an individual detained under 8 U.S.C. § 1226(c) after having been convicted of certain crimes, but prior to an order for removal.[3] 965 F.3d at 207. Wazir is subject to an order for removal. His detention is governed by a separate statutory provision, 8 U.S.C. § 1231, based on that final order.

When an alien is ordered removed, the government "shall" remove the alien from the United States within a period of 90 days, the "removal period." 8 U.S.C. § 1231(a)(1)(A). Section 1231 contains statutory provisions defining

---

[3] The factors articulated in German Santos may also guide district courts in evaluating the due process claims of individuals detained under 8 U.S.C. § 1225(b) after a period of detention. A.L. v. Oddo, 761 F. Supp. 3d 822, 826 (W.D. Pa. 2025) Wazir's detention is not governed by Section 1225(b).

3

when the removal period begins. Id., § 1231(a)(1)(B).  The removal period begins on the latest of the following dates:

> (i) The date the order of removal becomes administratively final[;] (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order[;] or (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

Id.  During the removal period, the individual subject to the removal order shall be detained. Id., § 1231(a)(2)(A).

Only Section 1231(a)(1)(B)(i) is applicable to the petitioner.  That is, Wazir's removal period began on the date his removal order became administratively final.  Petitioner's order of removal became administratively final on June 25, 2025 when he waived appeal, or approximately 10 months ago. (Doc. 3-6, Resp. Ex. 5, A. Hans Decl. ¶ 5).  The Section 1231(a)(1)(A) removal period in this case ended on September 23, 2025.

"After that 90-day period, aliens ordered removed as inadmissible under 8 U.S.C. § 1182, like petitioner may be detained beyond the removal period or released under supervision." Munoz-Saucedo v. Pittman, 789 F. Supp. 3d 387, 395 (D.N.J. 2025) (quoting 8 U.S.C. § 1231(a)(6); Zadvydas, 533 U.S. at 683) (cleaned up).  Section 1231(a)(6) does not expressly specify how long detention past the 90-day removal period may continue. Johnson v. Arteaga-Martinez, 596 U.S. 573, 579 (2022).  In Zadvydas, the Supreme Court construed 8 U.S.C. §

4

1231(a)(6) to permit detention "only for a period reasonably necessary to secure removal," and recognized a "presumptively reasonable" six-month detention period. [4] 533 U.S. at 699, 701.  After six months, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the [g]overnment must respond with evidence sufficient to rebut that showing." Id. at 701.  "Zadvydas does not delineate the boundaries of evidentiary sufficiency, but it suggests that an inversely proportional relationship is at play: the longer an alien is detained, the less he must put forward to obtain relief." Alexander v. Att'y Gen. U.S., 495 F. App'x 274, 276–77 (3d Cir. 2012).

Here, at the 10-month mark, there is a final order authorizing Wazir's removal to Afghanistan or, in the alternative, Pakistan.  In his petition, Wazir highlights his cooperation with ICE in the removal process.[5]  According to the petitioner, he obtained a travel document from a Canada-based embassy of the out-of-power Islamic Republic of Afghanistan on August 31, 2025. (Doc. 1, Pet.

---

[4] The statute's use of "may" suggests discretion, not necessarily unlimited discretion; it is thus ambiguous. Clark v. Martinez, 543 U.S. 371, 377 (2005) (quoting Zadvydas, 533 U.S. at 697, 689, 699).  Based on that perceived ambiguity and the serious constitutional threat posed by indefinite detention of aliens who had been admitted to the country, the United States Supreme Court interpreted Section 1231(a)(6) to permit only detention that is related to the statute's basic purpose of effectuating an alien's removal. Id. (quoting Zadvydas, 533 U.S. at 699)); see also Johnson, 596 U.S. at 579 (discussing Zadvydas).

[5] The court notes that Wazir, in turn, is aided in his cooperation efforts by Lancaster County community members.

at 3–4). There is one conspicuous issue, however. Any effort to remove Wazir to Afghanistan runs through the Taliban. There are no diplomatic relations between the United States and the present theocratic regime controlling Afghanistan. Wazir describes this aptly as a legal dilemma. Id. Although he has produced a letter indicating he wishes to return to Afghanistan, he argues that removal to his home country is futile under such circumstances. With this evidence, Wazir has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

Under Zadvydas, the burden shifts to the government to submit evidence to rebut that showing. To do so in this case, respondents supply the declaration of ICE Deportation Officer Amanda Campbell. (Doc. 7-3). According to Deportation Officer Campbell:

> On or about July 31, 2025, a Travel Document (TD) application was submitted to the Afghanistan Consulate in Ottawa, Canada. On or about August 6, 2025, Petitioner was interviewed by the Afghanistan consulate and [Enforcement and Removal Operations] was informed the[] consulate would issue a TD within the next few days. On or about September 2, 2025, a TD was issued. On or about September 8, 2025, Petitioner was placed on the list of Afghans needing a transportation letter and HQ-RIO [Headquarters, Removal and International Operations] is attempting to secure the travel letter.

Id. ¶¶ 6–8.

Campbell avers: "Once a Travel Letter is issued there is a significant likelihood of removal in the reasonably foreseeable future." Id. ¶ 14.

But, to date, there is no travel letter.  According to the respondents, the travel letter has been pending for over six months.  In lieu of the travel letter, respondents offer general statistics demonstrating that individuals continue to be removed to Afghanistan.  Absent further information specific to Wazir, however, Campbell's declaration is insufficient to rebut the petitioner's demonstration that he will not be removed to Afghanistan anytime soon.

It is also reasonable to presume that, if Wazir truly desires to return to Afghanistan, such a return could be effectuated through removal to Pakistan. Campbell's declaration does not describe any efforts to remove petitioner to Pakistan, as authorized in the alternative by the immigration judge.  There is no explanation from the government why that alternative has not been explored ten months from the final removal order in this case.  Therefore, because the evidence does not demonstrate a significant likelihood that Wazir will be removed to either Afghanistan or Pakistan in the reasonably foreseeable future, he will be ordered released from confinement at FCI-Lewisburg. The Zadvydas framework dictates this outcome. 533 U.S. at 699–700 ("if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.")

7

Nonetheless, Wazir's release from custody will be subject to conditions. Id. at 700 ("the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions."). The statute, 8 U.S.C. 1231(a)(3), authorizes supervision under promulgated regulations. 8 C.F.R. § 241.5.

Furthermore, as indicated above, Wazir pled guilty to counts of indecent assault, which are sex offenses. The Lancaster County Court of Common Pleas determined that probation was an appropriate criminal sentence for the petitioner. According to the court's review, he would still be subject to that sentence for another year. To the extent that there is any concern that "illegal, inadmissible aliens will be released notwithstanding their criminal history and obvious flight risk" as the result of the Zadvydas framework, 533 U.S. at 717 (Scalia, J., dissenting), federal *and* state authorities will be supervising the petitioner's release in this case.

Therefore, for the reasons set forth above, it is hereby **ORDERED** that:

1) Faisal Wazir's petition for writ of habeas corpus, (Doc. 1), is **GRANTED**;

2) Respondents shall release Wazir from detention within five (5) days of the date of this order;

8

3) Wazir shall be subject to the terms of supervision in 8 U.S.C. § 1231(a)(3) and attendant regulations;

4) Respondents shall release Wazir with any and all personal property, including the items he had with him at Moshannon Valley Processing Center or other detention locations;

5) Within seven (7) days, respondents shall file a declaration or affidavit pursuant to 28 U.S.C. § 1746 confirming that Wazir has been released; and

6) The Clerk of Court is directed to close this case.

Date: 4/24/26

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court